## NEW YORK STATE *v.* BARKER.

ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

No. 51.   Argued October 30, 1900.—Decided December 10, 1900.

In this record there is no averment and no proof of any violation of law by the assessors of New York. The mere fact that the law gives the assessors in the case of corporations two chances to arrive at a correct valuation of the real estate of corporations when they have but one in the case of individuals, cannot be held to be a denial to the corporation of the equal protection of the laws, so long as the real estate of the corporation is, in fact, generally assessed at its full value.

This court cannot, with reference to the action of the public and sworn officials of New York city, assume, without evidence, that they have violated the laws of their State, when the highest court of the State refuses, in the absence of evidence, to assume such violation.

The case is stated in the opinion of the court.

*Mr. David Willcox* for plaintiff in error. *Mr. William S. Opdyke* was on his brief.

*Mr. James M. Ward* for defendants in error. *Mr. Theodore Connoly* and *Mr. John Whalen* were on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error comes here for the purpose of obtaining a review of the judgment of the New York Court of Appeals, which affirmed the judgments of the courts below dismissing a writ of certiorari.

The relator is a corporation created under the laws of the State of New York and a resident of and doing business in the city of New York, and it procured the writ, as provided for in the statute, to review an assessment of $165,999 made upon its capital in the regular course of proceedings to levy and collect the annual tax budget of the city for the year 1896. Plaintiff sought to review the assessment on the ground,

among others, that it was illegal, and that to levy it, under the facts stated, would be to deny to the company the equal protection of the laws.

The facts upon which the question arises are these : The capital of the company was $900,000. The tax commissioners of the city of New York, in the course of their proceeding to tax the actual value of that capital, ascertained the actual value of what they termed the total "gross assets" of the company, which they found to have been................... $1,095,049

This value was arrived at from a statement of its property made by the company to the commissioners. By the term " gross assets," used by the commissioners, is meant the actual value of the capital and surplus of the company, but not its franchise. *People ex rel. Union Trust Company* v. *Coleman,* 126 N. Y. 433.

From this total they deducted —

    (*a*) The debts of the company.......$329,050

    (*b*) The assessed value of the real estate

        of the company, otherwise taxed. 600,000

                              929,050

Leaving a balance of...................... $165,999
which was the amount upon which the company was assessed upon its capital aside from the assessment of $600,000, separately made upon its real estate.

The company claims that these "gross assets" should have been stated at $730,049, and the same deduction should be made as in the above statement, which would result in no assessment on the capital.

This difference of gross assets arises in this way : As made up by the commissioners they consist of the actual value of the building and lot owned by the company in New York city, in which it does business, taking it at its cost as admitted by the company in its statement made to the commissioners and which the commissioners found to be its actual value, viz.. $ 965,000
And to that is added other property............. 130,050

Making a total of...................... $1,095,049,
while the item as claimed by the company is made up of the

value of the same building and lot as it was assessed by one of
the deputy tax commissioners for the purpose of separate taxa-
tion under the law, such assessed value being . . . . . . . $600,000
Added to that was the same item of . . . . . . . . . . . . . . .   130,050
for other property as stated by the commissioners, the
gross assets of the company by this valuation amount-
ing to . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $730,050
and the difference between the two items is seen to be $365,000.
The plaintiff in error insists that in arriving at the actual value
of the capital for taxation under the statute of 1857 (the third
section of which is set out below) the real estate which goes to
make up a part of such value should be put in at its value
as assessed for taxation in a separate manner, while the com-
missioners claim that as the law provides that the assessment
upon the capital shall be at its actual value, it is necessary to
arrive at the actual value of the real estate before a particu-
lar assessment can be reached in regard to the capital, which
includes it, and that in arriving at the actual value of the real
estate they are not estopped from determining what that actual
value is by the fact that for the purpose of a separate assess-
ment the real estate had been mistakenly and improperly
assessed at another and a lower figure.

These conflicting claims arise out of the statute which pro-
vides for the taxation of corporations, their capital stock and
surplus, and the general statute which provides for the taxation
of real estate belonging either to individuals or corporations.
That portion of the statute relating to the taxation of the cap-
ital of corporations which provides the method to be pursued
reads as follows :

"The capital stock of every company liable to taxation, ex-
cept such part of it as shall have been excepted in the assess-
ment roll, or as shall have been exempted by law, together with
its surplus profits or reserved funds, exceeding ten per cent of
its capital, after deducting the assessed value of its real estate,
and all shares of stock in other corporations, actually owned by
such company, which are taxable upon their capital stock under
the laws of this State, shall be assessed at its actual value and

taxed in the same manner as the other personal and real estate of the county." Laws of 1857, c. 456, § 3.

As the New York Court of Appeals, in *People* v. *Commissioners of Taxes*, 95 N. Y. 554, has said, there is a most extraordinary confusion of ideas in the above section. Its meaning has, however, in some respects been made tolerably clear by the above cited case, together with those of *The People ex rel. Union Trust Company* v. *Coleman*, 126 N. Y. 435, and *People ex rel. Equitable Gas Light Company* v. *Barker*, 144 N. Y. 94.

In the first case it was stated that the general purpose of the statutes relating to assessments and taxation is to secure an assessment of all property, real and personal, at its actual value, and they are to be construed and enforced with this purpose in view. A construction of the statute in relation to other questions not material here was given in that case. In the case reported in 126 N. Y. it was held that the phrase "capital stock" contained in the section above quoted meant not the share of stock owned by the individual members but the capital owned by the corporation, and that this capital was to be taxed, together with the surplus, after making the reductions provided for in the section, and that the law did not include, for purposes of assessment and taxation, the franchises of the company.

In the *Equitable Gas Light Company Case*, 144 N. Y. 94, it was held that in arriving at the actual value of the capital for purposes of assessment, the assessors were not concluded by the assessed value of the real estate made for purposes of separate taxation if that assessment were a mistaken one, but might legally disregard such assessed valuation and estimate the real estate at its actual value, although it exceeded its assessed value.

Looking at the manner of assessing the real property of both individuals and corporations we find the general statute is as follows:

1 Revised Statutes, 393, § 17; 9th ed. p. 1685:

"All real and personal estate liable to taxation shall be estimated and assessed by the assessors at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor."

And also 1 Revised Statutes, 389, § 6 :

" The real estate of all incorporated companies shall be assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals. . . ."

The special statute applying to New York city is substantially the same so far as assessment at full or actual value is concerned. Consolidation Act, c. 410, Laws of 1882, § 814.

Under these statutes the tax upon real estate must be imposed in all cases, both of individuals and of corporations, upon its full and true value as found by the assessors. In the case of the individual, however, no resort can be had to any other proceeding by which that tax can be increased by any subsequent assessment upon the difference between the assessed and the actual value of the real estate, if any there should be. In the case of corporations, on the contrary, under the construction given the statute of 1857 by the Court of Appeals, in the last above-cited case, if the real estate should be mistakenly assessed under the general statute at an undervaluation for purposes of separate taxation, the difference between the assessed and the actual value of the real estate may be reached in making an assessment upon the actual value of the capital under the act above mentioned. By such a result it is claimed the company is denied the equal protection of the laws. It must be remembered there is no claim made that in any event the corporation is taxed upon any property not legally taxable or that it is taxed beyond the actual value of its property as provided by law. The only claim is that in this opportunity to correct a mistaken assessment upon its real estate in the case of a corporation when assessed upon its capital, which does not exist in the case of an individual, the corporation is denied the equal protection of the laws. This is the sole Federal question in the case.

It is seen that the laws of the State provide for no undervaluation of real estate owned by either individuals or corporations. Those laws provide in terms for the assessment of all real estate at its actual value, while the whole force of the contention of the plaintiff in error is based upon the fact of undervaluation, although it is in the very teeth of the statute, and is a plain violation of its provisions. If there were no undervaluation of

real estate, or, in other words, if the laws of the State were complied with, the questions sought to be raised by the plaintiff could not arise. The failure of the assessors in this one instance to assess the real estate of the company for separate taxation at its actual value, and its assessment at that value in assessing for taxation the actual value of the capital of the company, could obviously work no denial of the equal protection of the laws to the company, if individuals were in fact assessed for their ownership of real estate at its full and true value as required by law. If the law were faithfully carried out, no harm could in any event come to the plaintiff in error by this subsequent assessment of its real estate at its full value, for it would only pay the same as individuals, they being assessed upon their real estate at its full value. To raise the question which the plaintiff in error seeks it was therefore obviously necessary to allege and prove as a fact that there was habitual violation of law by undervaluation; that, in the language of Mr. Justice Miller, in *Supervisors* v. *Stanley*, 105 U. S. 305, 318, the assessors "habitually and intentionally, or by some rule prescribed by themselves or by some one whom they were bound to obey," undervalued real estate for assessment in New York city ; or, as stated in *Cummings* v. *National Bank*, 101 U. S. 153, 155, that a rule or system of valuation had been adopted by those whose duty it was to make the assessment, which was designed to operate unequally and to violate a fundamental principle of the Constitution, and that such rule had been applied not solely to one individual, but to a large class of individuals or corporations. It was said in that case that this was precisely the case made by the bill, and if supported by the testimony, the court thought relief should be given. There was both allegation and proof.

Both these cases related to the taxation of national bank shares, and the question was whether the tax levied violated the provisions of the national banking act on that subject.

In this record there is no averment and no proof of any violation of law by the assessors of New York. There is no allegation in the petition for the writ of certiorari that there has been any undervaluation of real estate, either with regard to

individuals or corporations, but on the contrary it is therein asserted that the assessed valuation of the real estate of the company was its actual value, and that it had been overvalued in the valuation of the capital of the company. The mere fact that the law gives the assessors in the case of corporations two chances to arrive at a correct valuation of their real estate, when they have but one in the case of individuals, cannot be held to be a denial to the corporations of the equal protection of the laws, so long as the real estate of the individual is, in fact, generally assessed at its full value. But we are nevertheless asked by the argument at bar, in the absence of allegations or proof of habitual, or indeed of any undervaluation, to assume or take judicial notice of its existence, notwithstanding such undervaluation would constitute a clear violation of the law of the State. And this we are asked to do in order to reverse a judgment of a state court. Such a presumption of the violation of law and of their duty by the assessors, the Court of Appeals of New York expressly refused to adopt. *People ex rel. Manhattan Railway Company* v. *Barker*, 146 N. Y. 304. In delivering the opinion of the court, Judge Haight said, at page 312:

"The value of property is determined by what it can be bought and sold for, and there can be no doubt but that these various expressions used in the statutes are all intended to mean the *actual value* of the property. The commissioners are sworn officers, and as such, in the absence of evidence to the contrary, are presumed to have done their duty. They have assessed the real estate at $7,323,200, and yet, under the method presented by their counsel for ascertaining the value of the relator's personal property, they now estimate the actual value of the real estate to be $45,591,352. We are aware that it is generally understood that in many localities throughout the State assessors, in violation of their duties, assess the real estate in their localities at a sum less than its actual value, but in the absence of evidence that this has been done by the commissioners of taxes and assessments in the city of New York, we cannot assume that they have so transgressed, for the purpose of approving of their work in this case."

Should this court, with reference to the action of the public and sworn officials of New York city, assume without evidence that they have violated the laws of their State, when the highest court of the State itself refuses, in the absence of evidence, to assume any such violation? We think not.

Nor did the Court of Appeals act upon any judicial notice of the fact of undervaluation in the case of *The Equitable Gas Light Company*, 144 N. Y. 94, already cited. While the assessed value was stated, the commissioners in their return to the writ of certiorari distinctly showed that the actual was more than the assessed value, and the only question in the case was whether in arriving at the actual value of the capital they were bound by the assessed and could not be permitted to show the true value of the real estate. The court held they were not so bound.

What the court remarked about the practice of undervaluation was not the basis of its judicial action, for the facts were distinctly proved. The subsequent case in 146 N. Y. (*supra*) is a direct authority for the refusal to make any presumption of a violation of official duty.

This court did not presume a violation of duty in *Cummings* v. *National Bank, supra.* On the contrary, the bill alleged the facts, and the testimony supported the allegations. In extenuation of the practice alleged and proved, the court remarked in passing (page 162) that it was not limited to the State of Ohio, and that it was matter of common observation that in the valuation of real estate the rule was habitually disregarded. Although the justice who wrote the opinion did speak of the fact as matter of common observation, neither he nor the court took judicial notice thereof, but only those facts which had been pleaded and testimony to sustain which had been duly given formed the basis of judicial action. We will not and ought not to presume a violation in the absence of allegations and proofs to that effect.

Whether, if the case were proved, as assumed by counsel, it would in fact amount to any such discrimination against corporations as to work a denial to the plaintiff of the equal protection of the laws, is a question not raised by this record, and, therefore, not necessary to be decided.

Syllabus.

We think the plaintiff in error has failed to show any error in the record, and the judgment of the Court of Appeals of New York is, therefore,

*Affirmed.*