PORTER et al. v. LANGLEY et al.

(Court of Civil Appeals of Texas. Dallas.
March 29, 1913. Rehearing Denied
April 19, 1913.)

1. TAXATION (§ 611*)—RESTRAINING COLLECTION OF TAXES—ADEQUACY OF REMEDY AT LAW.

Persons who own the same kind of property, and who are affected in the same way by taxes imposed by the same officers, and whose rights are identical, may join in a suit to restrain the collection of taxes, though they have an adequate remedy at law, under the express provisions of Acts 31st Leg. c. 34, § 1.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

2. STATES (§ 191*)—ACTIONS AGAINST—WHAT IS—RESTRAINING COLLECTION OF TAXES.

A suit against officers of a county to restrain the collection of taxes assessed against property is not a suit against the state within the rule that the consent of the Legislature is necessary for the institution of a suit against the state.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. § 191.*]

3. APPEAL AND ERROR (§§ 499, 692*)—QUESTIONS REVIEWABLE—RULINGS ON EVIDENCE —BILL OF EXCEPTIONS.

An assignment of error complaining of the exclusion of testimony will not be considered where the bill of exceptions does not show the objection made in the trial court, and does not state the questions propounded to elicit the evidence sought.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298, 2905–2909; Dec. Dig. §§ 499, 692.*]

4. EVIDENCE (§ 155*)—EVIDENCE ADMISSIBLE BECAUSE OF SIMILAR EVIDENCE FOR ADVERSARY.

Where in a suit to restrain the collection of taxes on bank stock, because assessed at a higher rate than other property, the tax officers showed that the bank was organized in 1893, with a capital of $50,000, had accumulated a surplus of $50,000, together with $6,000 undivided profits, and had paid semiannual dividends ranging from 5 per cent. to 10 per cent., they could not well complain of evidence in rebuttal of the rapid increase in the value of land of the county.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

In a suit to restrain the collection of taxes on bank stock, because assessed at a higher rate than other property, the error, if any, in

admitting evidence of the rapid increase in the value of land in the county, was harmless, since it could not have prejudiced the jury as to value.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157; Dec. Dig. § 1050.*]

6. APPEAL AND ERROR (§ 690*)—RULINGS ON EVIDENCE—BILL OF EXCEPTIONS.

An assignment of error complaining of the overruling of objections to questions put to witnesses will not be considered where the bill of exceptions does not show what the witnesses testified to.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897–2899, 2902–2904, 2906, 2908; Dec. Dig. § 690.*]

7. EVIDENCE (§ 543*)—OPINION EVIDENCE— VALUE.

In a suit to restrain the collection of taxes on bank stock because assessed at a higher rate than other property in the county, witnesses competent to testify to the market value of land in the county may testify as to land values over objection that opinion evidence was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

8. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

The error, if any, in admitting testimony to prove a fact shown by evidence received without objection, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

9. TAXATION (§ 611*)—VALUATION—ASSESSMENTS—INSTRUCTIONS.

Where, in a suit to restrain the collection of taxes on bank stock because assessed at a higher rate than other property in the county, the evidence showed that land had a market value in the county and what it was, an instruction that the true cash market value of a commodity such as bank stock or land is the amount of cash or its equivalent for which the commodity can be bought or sold in due course of trade was not objectionable for failing to make a distinction between cash market value and the real or intrinsic value of property, since the law contemplates that all property shall be taxed according to its reasonable market value, where it has a market value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

10. TAXATION (§ 49*)—UNIFORMITY—EQUALITY—DISCRIMINATIONS.

Under Rev. Civ. St. 1911, art. 7573, requiring the members of the board of equalization to take an oath that they will not vote to allow any taxable property to stand assessed at any sum which they believe to be less than its market value, or its real value, and Const. art. 8, § 1, requiring all property to be taxed in proportion to its value, where bank stock is assessed at full value and land at 50 per cent. of its value, there is an unlawful discrimination against holders of bank stock, entitling them to enjoin the collection of the taxes on bank stock.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 115–124; Dec. Dig. § 49.*]

Appeal from District Court, Hill County; J. C. Roberts, Judge.

Action by L. Langley and others against Horton B. Porter and others. From a judg-

---

ment for plaintiffs, defendants appeal. Affirmed.

Wear & Frazier, N. J. Smith, and Thos. Ivy, all of Hillsboro, for appellants. Chas. L. Black and Morrow & Morrow, all of Hillsboro, for appellees.

RAINEY, C. J. Appellees, stockholders of several banks in Hill county, united as plaintiffs and brought this suit against the county judge, the commissioners' courts of two administrations, W. H. Knight, a former tax collector of Hill county, and B. L. Hodge, who was then collector of taxes. The allegations, in substance, were that said commissioners' courts fraudulently and willfully set up and maintained a higher value for the purpose of taxation with reference to bank stock than was maintained with reference to property generally, other than bank stock; that such a policy amounted to discrimination against bank stock and the holders thereof in favor of other species of property for the purpose of taxation; that assessments of bank stock were raised over that at which they were rendered, without giving due and proper notice of the intended raise by the board of equalization; that during the years of 1908–1911 bank stock was assessed by the board at from 85 to 100 per centum of its book value, including surplus and undivided profits, while other property was willfully, knowingly, and fraudulently assessed at from 41 to 50 per centum of its cash market value. An injunction was prayed for to restrain the collection of the amount of taxes assessed against bank stock under the rate mentioned, and requiring the tax collector to accept less than the tax fixed by the board of equalization.

Defendants answered by general demurrer, a series of special demurrers, a general denial, and specially that during all the years in question there was a custom prevailing with the banks in Hill county mentioned in plaintiff's petition and with the stockholders named as plaintiffs to permit the officers of the banks in question to act for them in the matter of rendering their bank stock for assessment for taxes, and in the matter of appearing before the board of equalization in Hill county in their behalf and as their representatives; that the officers of the banks in question had actually, as the agents of plaintiffs, rendered plaintiffs' bank stock for taxes during the years in question, and had actually appeared before the board of equalization as the agents of the plaintiffs; that the officers rendering said bank stock had due and proper notice of the intended raise as to the taxable values by the board of equalization; that the properties mentioned, together with all other properties in Hill county, were assessed and valued for taxation by the commissioners' court of Hill county while sitting as a board of equaliza-

tion and as a judicial body as provided by law; that the value of plaintiffs' properties and all other properties were assessed in an equal and uniform manner in proportion to values as provided by law; that each and all of said assessments were regularly and legally made and represented the judgment of said commissioners' court and of said board of equalization; that in arriving at such values with reference to the properties of plaintiffs and all other properties in Hill county the commissioners' court as individuals and as a board of equalization honestly tried and endeavored to place just and equal values on all properties; that, in furtherance of this undertaking, they summoned a great number of witnesses before them, and inquired of such witnesses under oath as to the cash market values and as to the real and intrinsic values, as provided by law, of all such properties, and that the values so fixed by them as a board of equalization were done in the light of the testimony so had before them and in accordance with said testimony; that their judgment in this particular therefore is final and conclusive of the issues presented by plaintiffs." The general and special demurrers were overruled, the case was submitted to a jury on special issues, and upon return of the verdict the court entered a judgment for plaintiffs, and defendants appeal.

[1] The first assignment of error is: "The court erred in overruling defendants' special exception No. 1, wherein it was alleged that for all the wrongs and threatened injuries complained of by the plaintiffs as to all of the defendants they had an adequate remedy at law." There is no error in the overruling of this demurrer. Plaintiffs may have an adequate remedy at law, still under our statute that alone does not preclude them from seeking relief through the writ of injunction. When a tax has been imposed on a number of persons owning the same kind of property which affects each in the same way, and by the same defendants, and the rights of plaintiffs are identical, there is no reason why they should not join in a suit for relief against the threatened injury to which they may be subjected. George v. Dean, 47 Tex. 73; Blessing v. Galveston, 42 Tex. 641; Acts Leg. 1909, p. 354, c. 34.

[2] The second assignment is: "The court erred in overruling and in not sustaining defendants' second special exception, to the effect that the several causes consolidated herein are in fact suits against the state of Texas and against Hill county, a definite subdivision of the state, and as the state had not given its consent to be sued in this particular the court had no jurisdiction to entertain this cause of action." The court did not err in overruling this special exception. The state is not a party to this action, and it is not such a one as required the consent of the Legislature for it to be in-

stituted, as it is not in any sense a suit against the state.

[3] The third assignment of error will not be considered by us. It is based upon the exclusion of the testimony of certain witnesses. The bill of exceptions states that "the plaintiffs objected, which said objections and all of them the court sustained," nor does it state the questions propounded to elicit the information sought. Our courts have held that it is a requisite of a bill when evidence is excluded that it show the objection made that the appellate court may determine whether or not error has been committed. Railway Co. v. Jarrell, 38 Tex. Civ. App. 425, 86 S. W. 632; Railway Co. v. Holzer, 127 S. W. 1062; Howard v. McBee, 138 S. W. 450; Grinnan v. Rousseaux, 20 Tex. Civ. App. 19, 48 S. W. 781.

[4,5] The fourth assignment is as follows: "The court erred in admitting the testimony of H. H. Simmons in favor of the plaintiffs, and over the objection of the defendants, to the effect that lands in Hill county and the best quality of lands in Hill county in the year 1893 were worth from $20 to $25 per acre, as more fully appears from defendants' bill of exception No. 2." The bill of exceptions shows that for the years 1908–1911 bank stock had been assessed for taxation at 100 per cent. on the dollar book value, and that for the same years the best quality of black lands had been assessed for taxation at not more than $40 per acre, and during the same time the revenue producing qualities for both real estate and bank stock had been shown and after Simmons had testified that the bank stock at said time was worth its book value, and that real estate, best quality, was worth from $100 to $125 per acre, he was then asked what the market value of the best quality of black land in Hill county was worth in 1893, and was permitted to state that it was worth from $20 to $25 per acre, to which an objection was made by defendants because it was irrelevant, immaterial, and a matter not involving the value of land at the time not covered by the pleading, and because the answer sought was prejudicial to the rights of defendants, and asked for the purpose of permitting counsel for plaintiffs to make an inflammatory argument with reference to the rapid increase in the value of land, etc.

Before the testimony complained of was admitted, at the instance of appellants it was shown that the Citizens' Bank of Hillsboro organized in 1893 with a capital stock of $50,000, since which time it had accumulated a surplus of $50,000, together with $6,000 undivided profits; that during the first twelve years the bank paid a 5 per cent. dividend every six months, and then the dividends went up to 6, 7, or 8 per cent. every six months; that for the past four years the bank had been paying 10 per cent. every six months; that since 1893 all the dividends had been paid and a surplus of 100 per cent. had been accumulated. Having introduced testimony showing the rapid increase in the value of bank stock since 1893, we are of the opinion that appellants are in no attitude to complain of the admission of testimony as to the rapid increase in the value of land; it being in rebuttal. Besides, if error, it is harmless, as under the evidence the admission of said testimony could not possibly have prejudiced the jury as to value.

[6-8] The fifth assignment is: "The court erred in overruling the defendants' objections to the question of the plaintiffs' counsel to the several witnesses, John Martin, J. Willie, H. H. Simmons, W. H. Wood, W. H. Knight, and W. H. Sanders, in substance as follows: 'Do you know the cash market value of land in Hill county during the years 1908, 1909, 1910, and 1911? By cash value I mean what land sold for, cash or its equivalent.' And permitting the witnesses to answer said question, as more fully appears by defendants' bill of exception No. 3." The bill of exceptions is: "Be it remembered that upon the trial of the above styled and numbered consolidated causes it became and was material inquiry as to what was the cash market value of lands in Hill county, Tex., during the years 1908, 1909, 1910, and 1911, in order to determine whether there had been discrimination in favor of lands in such county by the commissioners' court of such county sitting as a board of equalization to equalize the taxable values of all species of property in said county during said time. Accordingly, it had been shown that bank stock had been assessed by said board in said county during the years in question at its book value, and the best quality of real estate had been assessed not more than forty ($40) dollars per acre. In this connection while the witnesses John Martin, H. H. Simmons, W. H. Wood, W. H. Knight, and W. H. Sanders were on the stand they were asked by plaintiffs: 'Do you know the cash market value of lands in Hill county during the years 1908, 1909, 1910, and 1911? By 'cash market value' I mean what lands sold for, cash or its equivalent." To which question and statement to each of said witnesses the defendants objected, on the ground that the question as qualified by the statement of counsel for plaintiffs permitted each of said witnesses to substitute their own undisclosed ideas as to what was the market value of lands during the years in question, as to what constituted market value and as to what constituted the equivalent of cash, and permitted these facts and each of them to be assumed by each and all of said witnesses, when these were facts constituting the substance of the cause of action in this suit and were facts to be determined by the jury, and because the answer sought by such qualified question was prejudicial to the rights of the defendants, which said objection was by the court overruled,

and the witnesses were permitted to testify that they did know what the market value of lands was during the years in question in Hill county, Tex., when sold for cash or its equivalent, and were permitted to testify what their opinions were in this respect. To which questions and ruling of the court and answers the defendants then and there in open court excepted upon the grounds stated, and here and now tender this their bill of exception No. 3, and ask that it be approved and allowed by the court and ordered filed among the papers, and that it become a part of the record, which is accordingly done." The appellees object to a consideration of this assignment because the bill of exceptions does not show to what the witnesses testified in reference to values. This is a good objection because it cannot be determined from the bill whether or not the testimony was harmful. Mullen v. Railway Co., 92 S. W. 1000. We will remark, however, that we do not see any valid objection to the testimony as the witnesses showed themselves qualified to testify in regard to market value of land in Hill county, and such value was an issue in the case. Besides, there was other testimony as to the value of land which was admitted without objection. Appellants regarded such an issue material by requesting a special charge as follows: "You are instructed that 'market value' and 'cash market value' are convertible terms, and mean what the commodity will sell for, for cash or its equivalent, when offered in the market in reasonable quantities."

[9] The seventh and last assignment presented by appellant is as follows: "The court erred in paragraph 2 of its charge to the jury wherein the court instructed the jury as follows: 'The true cash market value or real value of a commodity such as bank stock or land is the amount of cash or its equivalent which such commodity can be bought or sold for under ordinary circumstances in due course of trade. You will be governed by this definition and no other in arriving at your answers to the following questions: First, because said definition makes no distinction between the cash market value or the real or intrinsic value of property; second, because it leaves to the jury to conclude what is the equivalent of cash; third, because it was an issue in the case for the jury to determine in this case whether lands on the 1st day of January, 1908, 1909, 1910, and 1911 had in Hill county a cash market value, and, if not, whether there was a real or intrinsic value for lands at said time and such distinction between cash market value, if any existed, and if not then the real or intrinsic value of land was presented to the court by special charges requested by the defendant; fourth, and the court emphasized this error by directing the jury that they should be governed by the definition given them by the court in arriving at their answers, and precluded them from taking any other view as to the values.'" Under this assignment appellant makes the following proposition: "Where under the law the jury by its findings should make distinction, it is error for the court to require a finding assuming there is to be no distinction." The court did not err in giving the charge complained of in this assignment, as the evidence abundantly showed that land had a market value in Hill county, and what that was, and there was no necessity for the court to make a distinction between the cash market value and the real or intrinsic value of property. The law contemplates that all property shall be taxed according to its reasonable cash market value, if it has a market value, if it has no market value then at the real or intrinsic value thereof. In arriving at the true value the "officer or court shall take into consideration what said property could have been sold for any time within six months next before the rendition of the said property." R. S. 1911, arts. 7569, 7570, and 7573.

[10] By article 7573, before convening as a board of equalization, and before considering the subject of equalization of property values for the purposes of taxation, each member of the commissioners' court shall take an oath that he "will not vote to allow any taxable property to stand assessed on the tax rolls of said county for said year at any sum which I believe to be less than its true market value, or if it has no market value then its real value," etc. From the wording of the foregoing article we conclude that, when property has a market value, it has to be taxed at that value, and, when the evidence as in this case shows conclusively that it has a market value, it was the duty of the court to confine the jury to a consideration of that value and none other.

The evidence showing that the bank stock was assessed at its full value or at 100 per cent. of its value and the land at 50 per cent of its value, we conclude there was a discrimination as against the plaintiffs, who are bank stockholders and entitled to the relief granted by the court.

Our Constitution (art. 8, § 1) requires all property to be taxed in proportion to its value, whether owned by natural persons or corporations. "The rule announced by that provision is 'equality and uniformity.' To secure this 'uniform and equal' taxation, the same sentence prescribes that the property of all persons and corporations, other than municipal, 'shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.' This is a clearly expressed purpose—that the officers charged with the assessment of property shall in the manner prescribed by law ascertain its value. 'The value of the property is to be determined by what it can be bought and sold for.' New York State v. Barker, 179 U. S. 285 [21

Sup. Ct. 123, 45 L. Ed. 190]. If it means full market value when applied to the intangible assets of a railroad company, it means the same thing when applied to land, horses, etc. The standard of uniformity prescribed by the Constitution being the value of the property, taxation cannot be in the same proportion to the value of the property, unless the value of all property is ascertained by the same standard. The value of the intangible assets of appellee being fixed at their full value, and the value of all other property in Dallas county being assessed at 66⅔ per cent. of its value, appellee was denied the right of equal and uniform taxation secured to it by the Constitution of the state." Lively v. Railway Co., 102 Tex. 545, 120 S. W. 852.

The evidence showing the value of land in Hill county to be from $90 to $125 an acre and assessed at $40 per acre, and bank stock assessed at 100 per cent. on its value, the assessment for taxation was a clear discrimination against the owners of the bank stock and the principle announced in Lively v. Railway Co., supra, is clearly applicable to this case; and we hold that no reversible error is presented, and the judgment is affirmed.