WHITE RIVER LUMBER COMPANY *v.* ARKANSAS EX REL. APPLEGATE, ATTORNEY GENERAL.

No. 101. Argued January 7, 8, 1929.—Decided May 27, 1929.

*Mr. Thomas S. Buzbee,* with whom *Messrs. George B. Pugh, H. T. Harrison,* and *A. S. Buzbee* were on the brief, for plaintiff in error.

*Messrs. John M. Rose* and *George Vaughan,* with whom *Messrs. R. E. L. Johnson* and *H. W. Applegate,* Attorney General of Arkansas, were on the brief, for defendant in error.

Mr. Justice Sanford delivered the opinion of the Court.

This case involves a question as to the constitutional validity of the back tax law of Arkansas. Section 1 of Act No. 169 of the Arkansas Acts of 1913—which is set forth in the margin [1]—provides that where, because of any inadequate or insufficient valuation or assessment, or undervaluation, of any property which belonged to any corporation at the time taxes thereon should have been properly assessed and paid, there are overdue and unpaid taxes thereon owing to the State or a political subdivision thereof by any corporation, the Attorney General shall institute a suit in chancery in the name of the State for the collection thereof.

---

[1] This section amended § 1 of Act No. 354 of the Acts of 1911, so as to read: "Where the Attorney General is satisfied from his own investigations or it is made to appear to him by the statement in writing of any reputable taxpayer of the State, that in consequence of the failure from any cause to assess and levy taxes, or because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned or because of any inadequate or insufficient valuation or assessment of such property, or undervaluation thereof, or from any other cause, that there are overdue and unpaid taxes owing to the State, or any county or municipal corporation, or road district, or school district, by any corporation upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid; that it shall become his duty to at once institute a suit or suits in chancery in the name of the State of Arkansas, for the collection of the same, in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property as may be found, or in any county in which any part of such property as may have escaped the payment in whole or in part of the taxes as aforesaid may be situated . . ." C. & M. Digest, § 10204. It was also provided by an earlier act that the State and its political subdivisions should have a lien on the property for the payment of such overdue taxes, to be enforced by this suit. C. & M. Digest, § 10207.

In July, 1925, the State of Arkansas, proceeding under this section, brought suit in a chancery court, on the relation of the Attorney General, against the White River Lumber Company, a foreign corporation doing business in the State, for the recovery of back taxes. The complaint, as amended, alleged that the Company owned large tracts of valuable timber lands in four counties of the State,[2] which were worth from $30 to $50 an acre but had been undervalued and underassessed for taxation for the years 1915 to 1926, inclusive, at a valuation of about $4 per acre; and prayed judgment for overdue and unpaid taxes for those years at 50 per cent of their true value—the basis of valuation that had been fixed by an order of the State Tax Commission—less the assessments actually made. The Company, answering, denied that there had been any undervaluation; claimed that the lands had been valued on the same basis as like timber lands owned by other individuals and corporations; and alleged that section 1 of the law as attempted to be enforced against it, was repugnant to the due process and equal protection clauses of the Fourteenth Amendment.

The chancery court—finding that for the years in question the value of the lands constituting the " Big Island group,"[3] was $50 an acre, and that of the remaining lands $33.33 an acre, and that the average assessments of other lands in these counties had been at approximately 30 per cent of their value—back assessed the Big Island group at $15 per acre, and the other lands at $10 per acre, less credits for timber stolen and sold and the valuations at which they had been originally assessed; and, declared a lien on the several tracts for the amount of the back taxes due on them, respectively, as thus reassessed.

Upon cross appeals the Supreme Court held that the fact that the statute authorizing suits for back taxes

---

[2] These contained 41,500 acres.

[3] These contained 7,964 acres.

applied only to corporations, did not render it repugnant to the Fourteenth Amendment; that under it the State might maintain suit to recover additional taxes on the ground that there had been an inadequate or insufficient valuation or assessment of the corporate property; that in such case the reassessment should be on the same basis as that upon which the original and inadequate assessment should have been made; and that as it appeared that all other property was assessed at an average of 30 per cent of its value, the Company's lands, under the uniformity clause of the State Constitution, should be assessed at that per cent, despite the fact that the State Commission had fixed a higher basis. Applying these rules of law the court found from the testimony that it was not shown that there had been any inadequate or insufficient valuation of any of the lands except the Big Island group, but that this group was a body of lands that were unusually well timbered, had a value not possessed by the other timbered lands which were assessed at from $4 to $5 per acre, and " were of an average value, during the entire time covered by the assessments in question, of $40 per acre, taking into account the timber stolen and the timber sold." And holding that they should be assessed at a valuation of 30 per cent of that amount, that is, $12 per acre, less the valuation on which the taxes had been paid, the decree of the chancery court was modified so as to permit a recovery of back taxes on the Big Island group only, and on those lands only to the extent indicated. 175 Ark. 956.

1. It is urged here that the back tax act of Arkansas, in providing for the reassessment of property of corporations by judicial proceedings and the imposition of additional taxes thereon after the payment of the taxes assessed by the duly constituted assessing authorities, and in not providing for such reassessment of property belonging to natural persons, denies to the Company and other

corporations the equal protection of the laws in violation of the Fourteenth Amendment.

We cannot sustain this contention. It is unquestioned that the Arkansas statutes providing for the original assessment of property for taxation make no distinction between the lands of corporations and those of natural persons and that it is the duty of the assessing officers to assess them in like manner, according to their value. And the question now presented is merely whether a statute authorizing the collection of back taxes on lands which have escaped their just burden of taxation, is invalid because it is limited to the recovery of additional taxes on the lands of corporations which have been assessed at an inadequate or insufficient valuation, and does not extend to the recovery of such additional taxes on the lands of natural persons, which may likewise have been assessed at an inadequate or insufficient valuation. The decision in *Quaker City Cab Co.* v. *Penna.,* 277 U. S. 389, on which the Company chiefly relies, involved merely a question as to the invalidity of the discrimination made by a statute levying an original tax on the gross receipts derived by corporations from their operation of taxicabs. As there was no question whatever as to back taxes and no back tax act was involved, the decision is not controlling in the present case.

In *Whitney* v. *California,* 274 U. S. 357, 370, we said— citing various cases—that: "A statute does not violate the equal protection clause merely because it is not all-embracing . . . A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses . . . The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a

matter for the legislature to determine unless the case is very clear . . . And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion." These and like principles have been applied by this Court in four cases dealing directly with classifications made in back tax statutes and similar legislation.

In *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 526, 539, in which it was held that a state statute providing for the collection of back taxes on real property without including a like provision for collecting back taxes on personal property, should be sustained, the Court said: " The case is different from that of an ordinary tax law in which there may be some foundation for the claim that the legislature is expected to make no discrimination . . . For this statute rests on the assumption that, generally speaking, all property subject to taxation has been reached and aims only to provide for those accidents which may happen under any system of taxation, in consequence of which here and there some item of property has escaped its proper burden; and it may well be that the legislature in view of the probabilities of changes in the title or situs of personal property might deem it unwise to attempt to charge it with back taxes, while at the same time, by reason of the stationary character of real estate, it might elect to proceed against that. At any rate, if it did so it would violate no provision of the Federal Constitution. . . ."

In *New York State* v. *Barker,* 179 U. S. 279, 285, a general state statute imposed a tax on the real estate of individuals and corporations upon its full and true value as found by the assessors. In the case of individuals no resort was permitted to any other proceeding by which the tax could be increased by any subsequent assessment on the difference between the assessed and the actual value.

But in the case of corporations, if real estate should be mistakenly assessed at an undervaluation another statute afforded an opportunity to reach the difference between the assessed and actual value by making an assessment upon the actual value of the corporate capital, including the real estate. The only claim was that " in this opportunity to correct a mistaken assessment upon its real estate in the case of a corporation when assessed upon its capital, which does not exist in the case of an individual, the corporation is denied the equal protection of the laws." In overruling this contention the court said: " The mere fact that the law gives the assessors in the case of corporations two chances to arrive at a correct valuation of their real estate, when they have but one in the case of individuals, cannot be held to be a denial to the corporations of the equal protection of the laws, so long as the real estate of the individual is, in fact, generally assessed at its full value."

In *Florida Central, &c. R. Co.* v. *Reynolds,* 183 U. S. 471, 480, in which it was held that in so far as the Federal Constitution was concerned the legislature had the power to compel the collection of delinquent taxes from railroad companies for certain years, even though it made no provision for the collection of delinquent taxes for those years on other property, the Court, quoting with approval from the *Winona Land Co.* case, said: " If the State, as has been seen, has the power, in the first instance, to classify property for taxation, it has the same right of classification as to property which in the past years has escaped taxation. We must assume that the legislature acts according to its judgment for the best interests of the State. A wrong intent cannot be imputed to it. It may have found that the railroad delinquent tax was large, and the delinquent tax on other property was small and not worth the trouble of special provision therefor. If

taxes are to be regarded as mere debts, then the effort of the State to collect from one debtor is not prejudiced by its failure to make like effort to collect from another. And if regarded in the truer light as a contribution to the support of government, then it does not lie in the mouth of one called upon to make his contribution to complain that some other person has not been coerced into a like contribution."

In *Ft. Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532, 534, the State, proceeding under the statute here involved, had brought suit against a corporation to recover back taxes alleged to be due upon a proper valuation of its capital stock by reason of the fact that in assessing its value there had been omitted the value of stock owned by the corporation in two other corporations, each of which had paid full taxes. The corporation defended " on the ground that individuals are not taxed for such stock or subject to suit for back taxes, and that the taxation is double, setting up the Fourteenth Amendment." This Court, in overruling the defense " with regard to confining the recovery of back taxes to those due from corporations," said: " It is to be presumed, until the contrary appears, that there were reasons for more strenuous efforts to collect admitted dues from corporations than in other cases, and we cannot pronounce it an unlawful policy on the part of the State. See *New York* v. *Barker,* 179 U. S. 279, 283."

We see no ground for distinguishing the *Ft. Smith Lumber Co.* case from that now under consideration, and on that authority and for the reasons stated therein and in the earlier cases which we have cited, hold that the back tax statute of Arkansas, although confined to the property of corporations, does not deny to them the equal protection of the laws in violation of the Fourteenth Amendment.

2. It is also urged in behalf of the Company, that even if the back tax statute be valid on its face, it was so

applied by the Supreme Court of the State in the present
case, by selecting thirty-four tracts of land, constituting
the Big Island group, and reassessing the same on the
basis of their average value for twelve years on an average
basis of assessment instead of assessing them in accordance
with the Arkansas statutes according to the actual value
of each separate tract for each separate year on the actual
basis of assessment for that year, as to constitute a denial
of the equal protection of the laws. It does not appear,
however, from the record that this constitutional ques-
tion was presented in or passed upon by the Supreme
Court of the State; and as it was sought to raise this ques-
tion for the first time by assignments of error in this
Court, it is necessarily excluded from our consideration.
*Whitney* v. *California, supra,* 316; and cases therein cited.

3. No other federal question is presented by the record
for our consideration. The decree is

*Affirmed.*

Mr. Justice BUTLER, dissenting.

Plaintiff in error attacks a provision of an Arkansas
statute,* on the ground that it is repugnant to the equal
protection clause of the Fourteenth Amendment.

---

* The original Act was passed in 1887. Laws 1887, p. 33. There
was an amendment in 1911, which is not material here. Laws 1911,
p. 324. It was again amended in 1913. Laws 1913, p. 724. (The
words added by the last amendment are italicized, and those omitted
by it are included in brackets.)

"Where the Attorney General is satisfied from his own investiga-
tion or it is made to appear to him by the statement in writing of
any reputable taxpayer of the State, that in consequence of the
failure from any cause to assess and levy taxes, or because of any
pretended assessment and levy of taxes upon any basis of valuation
other than the true value in money of any property hereinafter men-
tioned *or because of any inadequate or insufficient valuation or assess-
ment of such property, or undervaluation thereof,* or from any other
cause, that there are overdue and unpaid taxes owing to the State,

It directs that, where because of undervaluation there are overdue and unpaid taxes upon any property which belonged to a corporation at the time such taxes should have been assessed and paid, the Attorney General shall bring a suit to collect them unless the title passes to an individual before suit. No law of the State creates or permits the enforcement of any like or similar liability against the property of individuals. The fact that the property is owned by a corporation is the sole basis of the classification. The claim here is for additional taxes upon land, and the land alone is liable. The owner cannot be held for either the original or back taxes. See decision below, 175 Ark. 956, 973. Like lands of individuals are shown to have been grossly underassessed. And if such lands were owned by corporations, they would be liable for back taxes.

The discrimination is deliberate. The statute, passed in 1887, is entitled "An Act to provide for the collection of overdue taxes from corporations doing business in this State." It was amended in 1913. In *State ex rel. Attorney General* v. *K. C. & M. Ry. and Bridge Co.*, 117 Ark. 606, the court said (p. 613): "The object of the amendatory act of 1913 was to give a complete remedy for the

or any county or municipal corporation, or road district, or school district, by any corporation, [or] upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, it shall become his duty to at once institute a suit or suits in chancery in the name of the State of Arkansas, for the collection of the same, in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property as may have escaped the payment in whole or in part of the taxes as aforesaid may be situated, in which suit or suits the corporation owing such taxes, or any corporation [or person] claiming an interest in any such property as may have escaped taxation as aforesaid, shall be made a party defendant. " § 10204 Crawford & Moses' Digest.

recovery of back taxes due by a corporation upon any property then in the State, which belonged to any corporation at the time such taxes should have been properly assessed and paid. It takes away the right conferred by the original act to proceed against property where the title had passed to an individual, although it had been owned by a corporation when the assessment was made and the taxes were payable . . ." And see concurring opinion, *State ex rel. Attorney General* v. *Bodcaw Lumber Co.*, 128 Ark. 505, 523.

This suit was brought in 1925; its original purpose was to recover from plaintiff in error additional taxes, for each of the 10 years ending with 1924, on the value of the company's "capital stock or intangible property." The complaint stated that plaintiff in error had paid taxes upon its real and personal property. It alleged that the assessed value of its tangible property "upon which defendant had actually paid taxes as provided by statute" was much less than the market value of its capital stock, and judgment was demanded against plaintiff in error for back taxes on such intangibles.

But it was found that the company had no property in Arkansas other than real estate, and about the same time the state supreme court, in *State* v. *Lyon Oil and Refining Co.*, [1926] 171 Ark. 209, held that the capital stock of a foreign corporation which is neither located nor used within the State cannot be taxed therein.

Then the complaint was amended to allege that the company owned timber lands in Arkansas which had been underassessed in each of the 12 years ending with 1926. The chancery court charged the lands with back taxes. The supreme court held that there had been undervaluation of only a part of the company's lands and that the amount of back taxes imposed by the decree should be reduced accordingly.

Such taxes are imposed upon the sole ground that through mistake the original assessments were too low. The procedure for the enforcement of taxes on lands is not affected by the character of the owner; the State looks only to the land. Lands of individuals are as likely to be erroneously undervalued as are those belonging to corporations. But the law directs the Attorney General to collect back taxes not in all cases where the taxes originally levied and paid were based on undervaluation, but only where property belongs to corporations at the time of the assessment and also at time of suit. He is not permitted to bring suit to make such collections against lands owned by individuals even if they were owned by corporations when undertaxed. As here applied, the Act singles out the lands of a corporation, leaving those of natural persons free from such claims. Transfer to an individual, whenever made, prevents the operation of the Act.

This case cannot be distinguished from *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389. There the tax in controversy was imposed upon the corporation's gross receipts derived from the operation of taxicabs. But the gross receipts of individuals in the same line of business were not taxed. And for that reason the law was held repugnant to the equal protection clause. The Court said (p. 402): "Here the tax is one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation. It is not peculiarly applicable to corporations as are taxes on their capital stock or franchises. . . . The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference . . . in the situation or character of the property employed." It is not pretended that such back taxes on lands of individuals may not be imposed as con-

veniently as upon those of corporations. The Arkansas law imposes a tax liability on lands of a corporation to which lands of an individual are not subjected. That case rules this one.

But there are cited in support of the decision below *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 526; *New York State* v. *Barker,* 179 U. S. 279, 285; *Florida Central, &c. R. R. Co.* v. *Reynolds,* 183 U. S. 471, 480; and *Fort Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532, 534.

*Winona & St. Peter Land Co.* v. *Minnesota, supra,* did not present any question under the equal protection clause. A state law provided generally for the assessment and taxation of both real and personal property which had been omitted from the tax roll. Lands of the company were assessed under the Act. It insisted (p. 528) that the Act violated the contract clause and the due process clause.

In support of the latter contention, the company argued that, as to back taxes on personal property, the Act was invalid because it failed to provide for notice to owners before the charges were fixed against them; that it could not be assumed that the legislature would attempt to enforce back taxes against lands alone, and that therefore the whole Act fell. But the state court declined to pass upon that contention, 40 Minn. 512, 521, and held that in any event back taxes on personal property might be enforced by an ordinary personal action. This court said (p. 539): "It seems to us . . that the assumption that it cannot be believed that the legislature would never seek to provide for the collection of back taxes on real property without at the same time including therein a like provision for collecting back taxes on personal property, cannot be sustained. The case is different from that of an ordinary tax law in which there may be some foundation for the claim that the legislature is expected

to make no discrimination, and would not attempt to provide for the collection of taxes on one kind of property without also making provision for collection of taxes on all other property equally subject to taxation . . . and it may well be that the legislature in view of the probabilities of changes in the title or situs of personal property might deem it unwise to attempt to charge it with back taxes, while at the same time, by reason of the stationary character of real estate, it might elect to proceed against that." The court concluded that in any event it was for the state court to determine whether the Act was severable.

Both in Minnesota and Arkansas, taxes and back taxes on personal property are enforceable against the owner; taxes and back taxes on land are enforced only against the land. The Minnesota Act did not attempt to make any classification. Moreover, a discrimination between personal property and land is essentially different from that attempted by the Arkansas statute. The equal protection clause does not require that, for purposes of taxation, land must be put in the class with merchandise, moneys, credits, livestock and other personal property. The differences in kind are sufficient to warrant classification.

In *New York State* v. *Barker, supra*, the controversy concerned an assessment of a corporation's capital stock. It was a proceeding against the corporation itself. There was no question in the case of increasing, reassessing or collecting taxes on land. The real estate of corporations and individuals was directly assessed, and the law required this assessment to be at actual value. In addition, there was imposed on corporations a capital stock tax, to be determined by deducting from total value of all its property, tangible and intangible, its debts and the assessed value of real estate, the remainder to be taxed as capital stock.

The taxing officers found the "actual value" of real estate to be $965,000 and added other property, making total gross assets, $1,095,049; they deducted debts, $329,050, and "assessed value" of real estate, $600,000, leaving $165,999, to be taxed as capital stock. The corporation insisted that in determining total gross assets the assessed value of the real estate should be substituted for its actual value; that would leave nothing to be taxed as capital stock.

Its contention was that the taking of its real estate at actual value instead of assessed value denied to it equal protection of the laws. This court pointed out (p. 284) that the failure to assess the company's real estate at its actual value for separate taxation and the use of actual value to ascertain the capital stock tax could work no denial of equal protection if the real estate of individuals was in fact assessed at its full and true value as required by law. And it said: "There is no allegation . . that there has been any undervaluation of real estate, either with regard to individuals or corporations. . . . (p. 285). But we are . . asked . . in the absence of allegations or proof of habitual, or indeed of any undervaluation, to assume or take judicial notice of its existence, notwithstanding such undervaluation would constitute a clear violation of the law of the State. . . (p. 286). Whether, if the case were proved, as assumed by counsel, it would in fact amount to any such discrimination against corporations as to work a denial to the plaintiff of the equal protection of the laws, is a question not raised by this record, and, therefore, not necessary to be decided." It requires no discussion to show that this case is not in point.

*Florida Central, &c. Railroad Co.* v. *Reynolds, supra,* considered a Florida statute providing for collection of back taxes on railroad properties. The single question was (p. 474) whether to reach backward and collect taxes

from certain kinds of property without also making provision for collecting taxes on other kinds of property transgressed the equal protection clause. It was held, as is well understood, that railroads so differ from other kinds of property that they may be separately classified. The case has no bearing here.

In *Fort Smith Lumber Co.* v. *Arkansas, supra,* the suit was to enforce an obligation of the corporation itself and not merely a claim for taxes against its land. The company in that case owned stock in two other Arkansas corporations and claimed it was entitled to omit such shares from the taxable value of its own stock. It defended on the ground that individuals are not taxed on such stock or subject to suits for back taxes. The Court said: " If the State of Arkansas wished to discourage but not to forbid the holding of stock in one corporation by another and sought to attain the result by this tax or if it simply saw fit to make corporations pay for the privilege, there would be nothing in the Constitution to hinder. . . . The same is true with regard to confining the recovery of back taxes to those due from corporations. It is to be presumed, until the contrary appears, that there were reasons for more strenuous efforts to collect admitted dues from corporations than in other cases, and we cannot pronounce it an unlawful policy on the part of the State."

This court assumed that the special burden was imposed in pursuit of a definite purpose on the part of the State in respect of incorporated owners of stock in Arkansas corporations. That decision rests upon the ground that the tax was peculiarly applicable to corporations. But a tax on land is not.

As the back taxes claimed are enforceable only against the land, there is no basis for the suggestion that there exists here any reason for more strenuous efforts to collect from corporations than from natural persons.

And there is no basis for an assumption like that made in the *Fort Smith Lumber Co.* case. The classification, at least when applied to land, is fanciful and capricious. *Liggett Co.* v. *Baldridge,* 278 U. S. 105, 114.

The decree should be reversed.

The CHIEF JUSTICE and MR. JUSTICE VAN DEVANTER. concur in this opinion.