Van De Griff, Sheriff, etc., vs. Haynie et al.

---

VAN DE GRIFF, Sheriff, etc., vs. HAYNIE, et al.

STATUTES CONSTRUED: *Act of March* 25, 1871, *creating State Board of Equalization, constitutional.*

General power, over the question of taxation, is given by the constitution to the legislative department, and it has, by implication, the

Van De Griff, Sheriff, etc., vs. Haynie et al.

power to determine the value of property to be assessed, and a power of discrimination in selecting the agents through which it may fix the taxable values of the state, which may be done by itself as a whole body, or its power delegated to others, and which, for certain purposes, may devolve upon the state senate without conflicting with the constitution.

APPEAL from *Nevada* Circuit Court.
Hon. G. W. McCown, Circuit Judge.
*Montgomery & Warwick*, for appellant.
*Warren & Warren*, for appellee.

BENNETT, J. This is a bill in equity praying for an injunction, presented to the judge of the ninth judicial circuit, to restrain the collection of so much of the taxes of Nevada county, for the year 1871, as was assessed by reason of the appraisement made by the state board of equalization.

Upon the hearing, no answer, plea or demurrer was filed by the defendants, nor was the granting of the injunction resisted in any manner. The prayer of the petitioner was granted, and the defendants appealed.

The general question submitted for our decision is, whether that portion of the 68th section of an act entitled "an act regulating the assessment and collection of the revenue of the state of Arkansas," approved March 25, 1871, which reads as follows, viz. : "The state board of equalization shall consist of the members of the senate, and the auditor of the state shall, by virtue of his office, be a member of the board and clerk thereof," is in contravention of any of the provisions of the state constitution.

The petitioners allege that the appraisement of property is not an act properly belonging to the legislative department, and that the senate, being a branch of the legislative department, cannot perform any of the functions belonging to another department of the government.

The question whether a law is void for its repugnancy to the constitution is at all times one of much delicacy, and when a doubt exists, ought seldom, if ever, to be decided in the affirmative. To justify such a decision, the conflict between the constitution and the law should be such that the court feels a clear and a strong conviction of their incompatibility with each other. This is especially so in the class of cases where the object of the law is to provide for an equality of taxation — a subject over which the legislative branch of the government is preëminently qualified to judge of the means best adapted to the accomplishment of the end sought. We must also bear in mind that constitutions necessarily deal in general language, and in their intepretation, words are to be understood in the sense in which they are generally used by those for whom the instrument was intended.

Our state constitution, like the constitutions (we believe) of every other state in the union, divides the attributes of government into three great branches, the executive, the legislative and judicial, and declares that no person belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases expressly provided in the constitution.

It is not necessary for us, on this occasion, to particularize the cases thus expressly excepted, because none of them have any bearing upon the point to be decided in this case.

A very little reflection is sufficient to satisfy us that the mere use of these terms is no satisfactory definition of these respective powers; and experience has already shown the difficulty attendant on this general language.

In surveying the general structures of all written constitutions, we are naturally led to an examination of the fundamental principles, on which they are organized. Every government must include within its scope the exercise of these

three great powers. The manner and extent in which these powers are to be exercised, and the functionaries in whom they are to be vested, constitute the great distinctions which are known to governments. In absolute governments, all three of these powers are confined to one person ; hence such a government is denominated a despotism. But in the more enlightened nations, we find these functions divided and separately exercised by independent functionaries, and in such cases the government is deemed a mixed one.

But in a representative republic, all power emanates from the people, and is exercised by their choice, and this division of power among different branches of government has been a favorite policy with patriots and statesmen. It has, by many, been deemed a maxim of vital importance, that these powers should be kept separate and distinct. The true nature, object and extent of this maxim, and the reason by which it is supported is, according to Montesquieu, that " when the legislative and executive powers are united in the same person, or the same body of magistrates, there can be no liberty, because apprehensions may arise lest the monarch or. senate should enact tyrannical laws, to execute them in a tyrannical manner. Again, there is no liberty if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control ; for the judge would be the legislator. Were it joined to the executive power, the judge might behave with violence and oppression." The same reasoning is adopted by Blackstone in his commentaries. 1 Black. Com., 146. And the Federalist, No. 47, has with equal point and brevity remarked that " the accumulation of all powers, legislative, executive and judicial in the same hands, whether of one, a few, or the many, and whether hereditary, self-appointed, or elective, may be justly pro-

18

nounced the very definition of tyranny." This just view of the nature of government, then, is founded upon the safety and liberty of the people, to save them from the tyranny and oppression of rulers. But when we speak of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. Judge Story, in his work on the constitution, vol. 1, p. 364, sec. 525, says: "It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other in the slightest degree. The true meaning is, that the whole power of one of these departments should not be exercised by the same hands, which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution."

Notwithstanding the strong terms in which this maxim of a division of powers is incorporated into the constitution, the same mixture will be found provided for, and indeed required in the same solemn instrument. Thus the governor exercises a part of the legislative power, possessing a qualified negative upon all laws. The house of representatives is a general inquest for accusation, and the senate is a high court for the trial of impeachments. The governor and senate, in some cases, act together in the appointment of officers, and the constitution has provided that contested elections shall be determined by both houses of the general assembly.

The general declaration in the constitution that the powers of government shall be divided into three departments, the legislative, executive and judicial, and declaring that neither of these departments shall exercise any of the powers properly belonging to either of the others, except as expressly permitted, is a declaration of a fundamental principle, and although one

of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connexion or dependence one upon the other ; but its true meaning, both in theory and practice is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. In the constitutions of the various states, there is a theoretical or practical recognition of the maxim, and at the same time a blending and admixture of different powers in the administration of the government. We are not, therefore, when a question arises as to the extent of the powers of either department, to conform our views to the general clauses, but look to the division actually made, to see what powers are clearly granted to each, and what might, by implication, be but a blending or admixture, in a degree, of two or more of those powers.

This leads us to ask, what is legislative power? What is executive power? What is judicial power? We shall find these questions, both on abstract inquiry and also in reference to many duties performed, and the necessities of our complex. political organization, not easy to answer; and yet, when answered, how are we to say, with accuracy, in what a legislative, an executive, or a judicial function consists, or where it stops.

In the case of *Wayman v. Southard*, 10 Wheat., 46, the court said : " The difference between the departments undoubtedly is, that the legislature makes, the executive executes and the judiciary construes the law, but the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not enter unnecessarily. According to all constitutional expounders, a

constitution is a limitation upon the powers of the legislative department, but is to be regarded as a grant of powers to the other departments. Neither the executive nor the judiciary, therefore, can exercise any authority or power except such as is clearly granted by the constitution. When a claim of power is advanced by them, the question is, whether it has been granted by the people to either of these departments, and if the grant cannot be shown, they have no right to exercise them. Not so with the legislative department; the constitution is only invoked to see what it prohibits the legislature from doing. We do not wish to be understood as saying, that all power must be expressly granted, because under any constitution, the doctrine of implication must be resorted to in order to carry out the general grants of power. A constitution cannot, from its very nature, enter into a minute specification of all the minor powers naturally and obviously included in, and flowing from, the great and important uses which are expressly granted. It is then established as a general rule that when a constitution gives a general power, or enjoins a duty to a particular department, it also gives, by implication, every particular power necessary for the exercise of the one, or the performance of the other.

The petitioners, in the case before us, claim that the equalization of property throughout the state, for the purposes of taxation, belongs to some other department than the legislative. If so, where, in the constitution, do we find any provisions, express or implied, from which such an inference may be drawn? If left to the judicial department or judicial tribunal of the state, to ascertain the amount of indebtedness of the individual taxpayers; and when ascertained, the payment of taxes can only be enforced by a resort to the judicial tribunals of the state, in the same manner that debts are recovered by one citizen from another. If such be the constitutional restric-

Van De Griff, Sheriff, etc., vs. Haynie, et al.

tions imposed on the power of taxation, the sovereign author-
ity of the state is virtually disrobed of its most important and
invaluable rights, of the very essence of sovereignty.   The
delays and expenses incident to such a system of collecting
the public taxes would effectually paralyze the right arm of
government, and render it wholly incompetent to the accom-
plishment of the all important objects for which it was consti-
tuted.

" A tax, in its essential characteristics, is not a debt, nor in
the nature of a debt.   A tax is an impost levied by authority
of government upon its citizens or subjects for the support of
the state.   It is founded on contract or agreement.   A debt
is a sum of money due by certain and express agreement.   It
originates in, and is founded upon contract, express or implied."
*Pierce v. Boston*, 3 Met., 520 ; *Camden v. Allen*, 2 Ducher, 398.

Unless the power is specifically delegated or expressed, no
right of action exists for taxes, and they cannot be turned into
judgments.   Both the state and municipal corporations have
a much better and more expeditious remedy.   They have the
the right by summary process, to enforce collection, by levy
and sale, and when this power exists, complete and ample as
it most assuredly is, it would be monstrous, without plain and
express authority to that effect, to say that they could aban-
don, at pleasure, the usual and simple manner of making col-
lections, and resort to judicial power for their enforcement.

Is equalization of property an executive act ?   That portion
of the constitution which relates to the executive department,
and the designation of executive officers, does not mention by
expression or implication the revenue of the state, or appraise-
ment or equalization of property, and unless it can be so
shown, we must infer that the duties do not necessarily be-
long to the executive functions.

Taxes are burdens or charges imposed by the legislative

power upon persons or property to raise money for public purposes or to defray the necessary expenses in administering the government. They are contributions levied on individuals for the service of the state. The power to tax rests upon necessity, and is inherent in every sovereignty. Such being the case, the legislature of a state possesses it, whether particularly specified in the constitution as a grant of power to be exercised or not.

But our *constitution expressly grants the power to this department.* See article X, Const. In reference to taxation, the constitution is not so much to be regarded a grant of power as a restriction or limitation of power.

That restriction which requires that all property shall be taxed by a " uniform rule " is so manifestly just, that it commends itself to universal assent. It was intended to make the burdens of government rest on all property alike, to forbid favoritism and prevent inequality. That the legislature of a state has power to value any taxable property within the state, and assess thereon a just proportion of the public taxes, we think cannot be disputed. The duty of ascertaining taxable values, and of assessing and collecting the taxes thereon, necesssarily rests in the discretion of the legislature, and it may perform that duty by its own legislative acts, or through the agency of such officers or tribunals, as it may appoint for that purpose. *State v. Mayhew*, 2 Gill., 487. It is not the fit province of the judicial or executive departments to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of power. *McCulloch v. State of Maryland*, 4 Wheat., 430.

Therefore, the power of taxation and of apportioning taxation, or of assigning to each individual his share of the burden, is vested by the constitution, as it is inherently, exclusively in the legislature, subject only to constitutional limitations.

The power of taxing and the power of equalization and apportioning taxation are identical and inseparable. Taxes cannot uniformly be levied without equalizing the value of the property, and apportioning it to the property taxed.

When the general assembly confides to county courts, boards of supervisors, or assessors or county commissioners, the power and duty of making what is called "assessments," the "levy of taxes," that is, of making out the "tax lists," and delivering a copy thereof to collectors, it is done not because the legislature do not possess the power of discharging the same duty itself, but because the power can be more conveniently and advisedly exercised by the justices of the county courts, supervisors, county commissioners or assessors. *State v. Mayhew*, 2 Gill., 487.

We find this power being exercised every day by legislative bodies. It has been done in the enactments of the state in relation to the building of levees, when by direct legislation, property was valued at not less than a fixed sum.

The statute, now sought to be overturned, by reason of its unconstitutionality, is a literal copy of the equalization law of Missouri, where it has stood many years without being questioned, the constitution of that state, being more guarded, if possible than our own, as to persons charged with the exercise of powers properly belonging to one department, exercising any power properly belonging to either of the others.

From a full consideration of the questions as raised by the petitioners in this case, we are led to announce that inasmuch as the constitution gives the general power to the legislative department over the question of taxation, it has, by implication, the power to determine the value of property to be assessed, and a power of discrimination in selecting the agents through which it may fix the taxable values of the state, which may be done by itself as a whole body, or its power delegated

to others, and which, for certain purposes, may devolve upon the senate without conflicting with the constitution.

A secondary point is raised in the petition. It is alleged that the equalization of the state was made by the senate, on the 25th day of March, 1871. On the 20th day of March, 1871, Nevada county was created by an act of the legislature, and that it was not included in the equalization of the senate ; therefore, the clerk of said county had no right to make the additional appraisement on that county.

By reference to the act creating Nevada county, we find that it was made out of parts of the territory of Hempstead, Ouachita and Columbia; and for revenue purposes it was the duty of the clerks of these several counties to give to the clerk of Nevada a complete and accurate list of all taxable lands on the assessment lists of said counties, which shall fall within the limits of said county.

The senate, acting as a board of equalization, raised the valuation of Hempstead county ten per cent., and Ouachita and Columbia eighty per cent., but did not specifically mention Nevada county.

The assessments of these counties were made by the assessors sometime before the meeting of the legislature, which created the county of Nevada, and if it was right and just that these counties should have their assessments raised in order to establish a " uniform " rate of taxation throughout the state, we cannot see wherein there would be any injustice in raising the valuation of the real estate taken from those counties, to conform to the general valuation. If for no other purpose, it would have been necessary in order to have made a uniformity of values throughout the county. The fact that the senate did not expressly mention Nevada county in their equalization can have no weight as to their intention that its real estate should not be equalized with the other portions of the

state, because all of its territory was embraced in the equalization of those counties from which it was formed.

The court erred in granting the injunction as prayed for; it is therefore dissolved.