WEISS, Collector of Internal Revenue, v. STEARN.

SAME v. WHITE.

(Circuit Court of Appeals, Sixth Circuit. January 9, 1923.)

Nos. 3759, 3790.

Internal revenue ⊂⊃7—Income received by stockholders on reorganization of corporation.

A corporation transferred all its property, subject to its debts, to a new corporation, organized under the laws of the same state, with substantially the same name, to take over and continue the business, but with a capital stock five times as large as the old company. One-half the new stock was distributed among the old stockholders at an agreed valuation, and a third party purchased the other half at the same valuation, the proceeds being distributed among the old stockholders and amounting to $150 for each share of the old stock. *Held* that, under Income Tax Act 1916, § 2(a), being Comp. St. § 6326b (a), such stockholders were subject to income tax only on the $150 per share so received.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Actions at law by Louis Stearn and by John G. White against Harry H. Weiss, Collector of Internal Revenue. Judgments for plaintiffs, and defendant brings error. Affirmed.

C. M. Charest, Sp. Asst. Bureau of Internal Revenue, of Washington, D. C., and B. W. Henderson, Asst. U. S. Atty., of Cleveland, Ohio (Edwin S. Wertz, U. S. Atty., of Cleveland, Ohio, and Carl A. Mapes, of Washington, D. C., on the brief), for plaintiff in error.

Charles P. Hine, of Cleveland, Ohio (Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for defendant in error Stearn.

John G. White, of Cleveland, Ohio (White, Cannon & Spieth, of Cleveland, Ohio, on the brief), for defendant in error White.

Before DONAHUE and DENISON, Circuit Judges, and PECK, District Judge.

PECK, District Judge. The question involved in these cases is whether the defendants in error were, by the District Court, properly regarded for the purposes of income taxation under the Revenue Law of 1916—39 Stats. 757, § 2(a); Comp. St. § 6336b(a)—as having disposed with profit of only one-half of their respective stock holdings in The National Acme Manufacturing Company, or whether they should have been considered as having so disposed of the entirety. The transaction in question was had pursuant to a contract between the stockholders and Eastman, Dillon & Co., by the first paragraph of which the former apparently agreed to sell, and the latter to buy, the stock "at and for the price of $300 per share, payable, one-half in cash and one-half in securities, as hereinafter set forth." But the real transaction, specifically required by the subsequent provisions of the contract and actually consummated, was as follows:

The stockholders delivered all of their stock to an intermediary, the Cleveland Trust Company, in trust. For each share so deposited they were to, and later did, receive $150 cash and five shares of new stock, of the nominal par value of $50 each, but actually valued at $30 per share for the purposes of the bargain, being, in the aggregate, one half (250,000 shares) of the stock of a new corporation formed to take over the business. Eastman, Dillon & Co., in order to acquire the other half of the stock of the new corporation, paid to the trustee $7,500,000, being at the rate of $30 per share for 250,000 shares. The vendors and vendees then proceeded to organize the new corporation under the laws of the same state, Ohio, with the same powers and the same name, except for the dropping of the word "Manufacturing." Its capital stock, $25,000,000, was five times that of the old concern, and was divided into shares of the denomination of $50 instead of $100 each, as theretofore. Accordingly there were ten $50 shares of the new for each $100 share of the old stock. The new corporation issued all of its stock to the trustee in exchange for all the assets subject to the liabilities of the old company. The trustee delivered one-half (250,000) of the shares of the new stock to Eastman, Dillon & Co., in consideration of the $7,500,000 paid in, and distributed pro rata among the old stockholders the other half, 250,000 shares, and the $7,500,000 at the agreed rate of $150 and five shares of the new for each share of the old stock. The old company was then dissolved and the new corporation continued business under the same management.

The net results, putting to one side for the moment the matter of reincorporation, were that the capital stock of the concern was increased five-fold, the face value of the shares cut in half, and that the old stockholders sold Eastman, Dillon & Co. one-half of their respective holdings at the price of $30 per share for the new stock. The income tax on such profit as was made on that half which was so sold was paid by defendants in error, who were among the old stockholders. They were, however, further compelled to pay a like tax because of the receipt of the other half of the new stock in exchange for the old, the government claiming that they made the same gain thereby as upon the half which they had sold, and for the recovery of this they sued and had judgment below.

It is clear that the half in question was not sold to Eastman, Dillon & Co. This is true, despite the above-quoted language of the first paragraph of the agreement, as substance must dominate form; and what was done, rather than what was agreed to be done, is the final criterion. United States v. Phellis, 257 U. S. at page 172, 42 Sup. Ct. 63, 66 L. Ed. 180. As to this half, the legal title never went to Eastman, Dillon & Co., nor beyond the Cleveland Trust Company, which held it for the benefit of the old stockholders, in whom the equity continued until the agreed equivalent in new stock was delivered to them and the old stock retired by the dissolution of the old corporation. Therefore, if the transaction as to this half resulted in taxable gain at all, it was not as the consequence of any sale to Eastman, Dillon & Co., but must be looked for in the transaction had between the old stockholders, the trustee, and the corporation.

The old corporation went through the form of an exchange of its assets for the new stock and a distribution thereof among its shareholders as upon final dissolution. There was nothing that can be properly called a sale of the half of the stock under consideration in any aspect of the case. The question to be decided resolves itself, therefore, to this: Is there taxable income to the stockholder in the receipt of shares of greater face value and actually worth more than the cost to him of old shares for which they are exchanged upon the occasion of a reorganization accomplished by the taking down of an old corporate structure and the setting up in its place of a new one, with the same powers, under the laws of the same state, but having greater capital stock, with a taking over of assets, subject to liabilities and a continuance of the business under the same management and name?

It is the present policy of Congress, as shown by the statute now in force, to regard such a transaction as nontaxable (Revenue Act 1921, 42 Stat. c. 136, p. 230, § 202 [c] [2]), although under the act of 1918 the matter had been made dependent upon the comparative face values of the old and new securities (40 Stat. 1060. § 202 [b], [being Comp. St. Ann. Supp. 1919, § 6336⅛bb]). The law of 1916, however, under which this case arises, did not deal expressly with exchanges of stock upon corporate reorganizations, and the case is left to be determined upon the general definition of that which is taxable as—

"including gains, profits, and income derived from * * * business, trade, commerce, or sales, or dealings in property, whether real or personal, * * * also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." Section 2 (a).

Except for change of corporate entity, there was here a continuance of the same concern. The assets were the same, and the stockholders (assuming the sale of the other half to have been consummated) were the same, and in the same proportions; the domicile, the powers, the name, substantially, and the corporate obligations, were all left as before. The same ends might have been achieved by an amendment of the articles of incorporation providing for the increase of the capital stock, the reduction of the face value of its shares, and the change of

name. Had this method of accomplishing the identical result been pursued, the increase in face value of the new certificates issued to the holders in exchange for the old would have been plainly a mere stock dividend, nontaxable under Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Therefore, if the transaction be taxable, it must be because of the giving up of the old and the taking on of the new charter. It is true that a new corporate being has intervened; but, where a corporate entity has been found to be a mere matter of form, it has been disregarded in similar transactions in respect to income taxation. Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142; Gulf Oil Co. v. Llewellyn, 248 U. S. 71, 39 Sup. Ct. 35, 63 L. Ed. 133; Alpha Portland Cement Co. v. United States (C. C. A.) 261 Fed. 339. Although it is not so when it is a matter of substance. Eisner v. Macomber and United States v. Phellis, supra.

The latter case, strongly relied upon by plaintiff in error, does not present a parallel situation. There the surplus had been separated from the capital for the purpose of distributing it among the stockholders in the form of the stock of a new corporation to which the assets were conveyed. But the old corporation continued to exist, its stock remained outstanding, and the segregation of capital from surplus was accomplished by setting over to it assets equal to its capital stock and capable of returning future dividends to its stockholders. In that state of affairs the Supreme Court said of the stockholder:

"* * * He could sell his entire portion or any of it [i. e., his dividend] without parting with his capital interest in the parent company, or affecting his proportionate relation to the interests of other stockholders. Whether he sold the new stock for money or retained it in preference, in either case when he received it he received as his separate property a part of the accumulated profits of the old company in which previously he had only a potential and contingent interest."

Rockefeller v. United States, 257 U. S. 176, 42 Sup. Ct. 68, 66 L. Ed. 186, likewise involved a distribution of the stock of a corporation created to take over part of the surplus of the parent corporation while the existence of the latter continued. Peabody v. Eisner, 247 U. S. 347, 38 Sup. Ct. 546, 62 L. Ed. 1152, exhibited the case of a distribution, as a dividend, of the stock of another corporation held by the parent company. In each of those cases there was a segregation of accumulated surplus and a distribution of it in the stock of a corporation other than the parent company, both corporations continuing to exist.

In the present case there has been no attempt on the part of the concern to segregate or distribute its surplus, but merely a reorganization accompanied by a stock dividend. It has not been divided into two corporations, one to hold the capital, the other to take the earnings, as in the cited cases. The old charter was surrendered when the new one was taken. The venture of the stockholder in the hazard of the business continues undivided. He has not drawn out his profit. His investment is still entirely in the same enterprise, albeit represented by

new certificates, yet essentially the same. For these reasons it is concluded that the distribution upon reorganization of the new stock in exchange for the old did not involve taxable income.

Accordingly the judgment of the District Court is affirmed.