STATE EX REL. ATTORNEY GENERAL *v.* ARKANSAS FUEL OIL COMPANY.

Opinion delivered June 24, 1929.

*Hal L. Norwood,* Attorney General, and *George Vaughan,* for appellant.

*Trieber & Lasley,* for appellee.

MEHAFFY, J.  The appellant filed its complaint in the Pulaski Chancery Court against the appellee and others, alleging that defendant acquired oil and gas leasehold estates on the property described; that said leasehold interest was taxable property under the provisions of the laws of Arkansas, and that, notwithstanding this, the owners had each failed, omitted and neglected to return said property for taxation, and no assessment thereof was made for the years 1924, 1925, 1926 and 1927, and made other allegations necessary in a suit to collect back taxes, and asked that the defendants each be required to plead, and that upon a final hearing the amount of overdue taxes owing to the State and her subdivisions be determined, and for judgment for same, and that said judgment be declared a lien upon the property of defendants, and that, if said judgments were not paid, said property be sold to satisfy the judgment.

Answer was filed, admitting that none of the leases and rights thereunder described in the complaint was assessed for taxation separate from the fee in the land for either of the years 1924, 1925 and 1926, and admits that no taxes were paid upon any of said leases or rights separate from the fee in said land for either of said years.

It is alleged that the leases and rights thereunder were not subject to taxation separate from the fee in said lands for either of said years, and alleged that all of said leases and rights were assessed and taxed for each of said years as a part and parcel of and as entered into the value of the fee in the lands covered thereby. Defendants further stated that no property right or interest in or to the oil and gas *in situ* in the lands covered thereby passed to the lessee and that there was no such separation of the title to the mineral rights in the fee simple as to authorize a separate assessment.  The only

rights under the leases constituted incorporeal hereditaments taxable alone in the State of West Virginia, the domicile of defendant.

It is further stated in the answer that the taxing authorities acquiesced in and never opposed or corrected the assessments made by the county and township assessing officers, and they refused to assess separately from the fee the leasehold interests; that the Attorney General of Arkansas had given an opinion to the effect that the leases were not taxable separately from the land, and that, following the opinion of the Attorney General and the instructions of the taxing authorities, and acting in pursuance thereof, the respective county and township officers intentionally and systematically failed and neglected and refused to list, value and return separately from the fee in the lands for the purpose of taxation, any of said leases or rights thereunder.

The appellant filed a demurrer to the answer, and especially to paragraphs one, three, six, seven and eight. The pleadings are quite lengthy, and we do not think it would serve any useful purpose to set them out more fully.

The appellee states that by this appeal two questions are squarely raised. The determination of the second one is necessary only in case the court returns an affirmative answer to the first. (1) Were oil and gas leases in the usual form subject to taxation separately from the fee in the lands for the four years 1924-1927, inclusive, preceding the filing of the State's complaint in this case? (2) Is the enforcement of the back-tax law in violation of § 5, article 16, of the Constitution of Arkansas and the Fourteenth Amendment to the Constitution of the United States, when such enforcement results, not haphazardly, but intentionally, in a classification of and discrimination against corporately owned oil and gas leases, and in the exemption of many such leases of great value not corporately owned?

Appellee contends that the oil and gas leases were not subject to taxation separately from the fee in the lands.

A copy of the lease is attached to the pleadings, and recites that, for a good and valuable consideration, receipt of which is acknowledged, and of the covenants and agreements contained on the part of the lessee to be paid, kept and performed, the lessor has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the county of.............................. And then follows a description of the land. It then recites that it is agreed that this lease shall remain in force for a term of................. years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. The lease then contains the covenants of the lessee, and provides that, if no well be commenced by a certain time, the lease shall terminate, unless the lessee pay or tender to the lessor, or to the lessor's credit in the bank, the sum of................. dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for.............months from said date. It also provides that, in like manner and upon like payments or tenders, the commencement of a well may be further deferred, etc. It recites that the down-payment covers not only the privilege granted to the date when said first rental is payable, but also the lessee's option of extending that period, and any and all other rights conferred.

There are a great number of other provisions in the lease, but we do not think it necessary to copy them here, but, if necessary to refer to any other portion of the lease, it will be done hereafter.

The appellee's first contention is that the leases did not work an actual severance of title in the land, and calls

attention to a number of cases, among which are three Arkansas cases. The first one to which attention is called is *Mansfield Gas Co.* v. *Alexander*, 97 Ark. 167, 133 S. W. 837. The Mansfield case was an action brought to cancel a mineral lease, and the question of taxation was not involved, nor was the question of whether the lease conveyed an interest in land. It was stated in the opinion;

"In deciding whether or not the lower court was right in entering a decree canceling said lease, we think it only necessary to determine whether or not the appellant and those from whom it obtained the lease have failed and refused to perform the covenants imposed upon them by the lease under such circumstances as to work a forfeiture thereof; for equity may enforce a forfeiture of a contract of lease giving the exclusive right to explore for minerals upon a tract of land where it would be inequitable to permit the lessee longer to assert such right by reason of his continued default. The respective rights of the parties must be determined by the respective obligations which they assumed by virtue of the contract of lease and by the manner in which they have performed or failed to perform those obligations. What, then, were the mutual obligations entered into by the execution of this lease? The contract was made for the mutual benefit of the parties. The purpose of the lease was not to make a grant of the land or to transfer any estate therein. It only gave a right to the lessee to search for minerals and an interest in the minerals when so found and taken out."

The next case to which appellee calls attention is *Osborn* v. *Ark. Ter. Oil & Gas Co.*, 103 Ark. 175, 146 S. W. 122. This was not a tax suit, and the questions involved in the instant case were not involved in the Osborn case. It is true, the court stated that the gas lease involved in that case was not a present sale of or transfer of title to the gas, but the court also said in that case: "The contending parties therefore have each a legal right to the rentals for the gas which they respectively own by reason of their ownership of the respective

tracts," and this was the question really determined in the case. There was a contention by the claimants as to the part of the rentals belonging to each.

Appellee next calls attention to the case of *Blair* v. *Clear Creek Oil & Gas Co.*, 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430. This was also a suit in equity against appellee to cancel a gas lease on the ground that appellees were drawing off the gas from appellant's lands by means of wells drilled on adjacent lands near appellant's boundary lines, and for damages resulting therefrom. Appellee defended the suit on the ground that there was no liability under the terms of the lease upon which the suit was based. In the Blair case the court said:

"The contract is a lease of the land for the purpose of drilling for oil and gas for the period of time designated therein, and the lessee has a vested right to the possession of the land to the extent reasonably necessary to perform the terms of the agreement on his part."

We do not think there is anything in either of the cases referred to that supports the contention of the appellee. It will not be contended that the mining right conveyed by the lease is not property. The contention, however, is that there is no severance of title, and that it must be taxed, if at all, with the land as a part of it.

Section 9856 of Crawford & Moses' Digest provides that when mineral rights in any land shall, by conveyance or otherwise, be held by one or more persons, and the fee simple in the land by one or more other persons, it shall be the duty of the assessor, when advised of the fact, either by personal notice or by recording of the deeds in the office of the recorder of the county, to assess the mineral rights in said lands separate from the general property therein. And in such case a sale of the mineral rights for nonpayment of taxes shall not affect the title to the land itself, nor shall a sale of the land for nonpayment of taxes affect the title to the mineral rights.

We construe this statute to mean that the property conveyed to the lessee in mining lease is taxable separately from the land.

This court has recently held that the rights granted to the lessee are not a license, but an interest and easement in the land itself.

"The rights granted to the lessee and which passed by mesne conveyances to the Standard Company were not a license, but an interest and easement in the land itself." *Standard Oil Co. of La.* v. *Oil Well Salvage Co.,* 170 Ark. 729, 281 S. W. 360; *Swert* v. *Robinson,* 289 Fed. 689; *Smith* v. *McCulloch,* 285 Fed. 689; *Rich* v. *Donaghey,* 71 Okla. 204, 177 Pac. 86, 3 A. L. R. 352; *Barnsdall* v. *Gas Co.,* 225 Pa. 238, 74 Atl. 207, 26 L. R. A. (N. S.) 614; *Blair* v. *Clear Creek Oil & Gas Co.,* 148 Ark. 310, 230 S. W. 286, 19 A. L. R. 430.

In the Standard Oil Company case the court also said: "The instrument under which the Standard Company was operating being a lease and conveying an interest and easement in the leased premises to the lessee, the lessor had no right by a subsequent lease to convey any interest that would be in conflict with such prior lease, and those holding under the subsequent instrument could not enter upon the premises and exercise alleged rights in conflict with the rights of those claiming under the prior lease without the knowledge, consent or acquiescence, and over the protest, of those holding under the prior lease."

"A tenant under a lease of lands for the purpose of growing crops has no ownership or interest in the land itself on which the crops are grown. Therefore, from a sale of such lease under execution the tenant has no right to redeem under the above statute. To be sure, those leases which convey to the lessee an interest and easement in the land itself, such as gas and oil, and other mineral leases, and leases for the purposes of cutting and removing timber and other natural products which are a part of the land itself, would fall under a different rule;

and we do not mean to hold that the statute under review would not be applicable to such leases.'' *Munson* v. *Wade,* 174 Ark. 880, 298 S. W. 95.

We have also held that an oil and gas lease conveys not merely a license, but an interest and easement in the land itself, and that in a suit to impose a lien upon the lease the action is local, and not transitory. *Clark* v. *Dennis,* 172 Ark. 1096, 291 S. W. 807.

We deem it unnecessary to refer to authorities of other States, for the reason that we think the question is settled by the decisions of this court.

It is next contended, however, that the statute is unconstitutional because it permits the collection of back taxes on corporately owned oil and gas leases and intentionally exempts property owned by individuals. As to the statute authorizing the levy and collection of taxes from oil and gas leases, there is no discrimination.

The statute provides that when the mineral rights of any land shall, by conveyance or otherwise, be held by one or more persons and the fee simple in the land by one or more other persons, it shall be the duty of the assessor, when this is brought to his attention, to assess the mineral rights separate from the general property therein. Section 9856, Crawford & Moses' Digest.

It will readily be seen that there is no discrimination; that the statute authorizes the assessment and collection of taxes on leases whether owned by individuals or corporations. But it is contended that the statute violates § 5 of article 16 of the Constitution of the State of Arkansas and the equal protection clause of the 14th Amendment to the Constitution of the United States. We cannot agree with appellee in this contention. The statute authorizing the assessment and levy of the taxes applies to corporations and individuals alike. And as to the statute authorizing suits for back taxes, we call attention to the following cases which settle the question against appellee's contention: *White River Lumber Co.* v. *State,* 175 Ark. 956, 2 S. W. (2d) 25; *State ex rel. Atty.*

*Gen.* v. *Fort Smith Lbr. Co.,* 131 Ark. 40, 198 S. W. 702, 2 S. W. (2d) 25. In the White River Lumber Co. case the court said:

"In upholding the right of the State to sue for these back taxes, it was stated by Mr. Justice Holmes, speaking for the court, that it was within the power of the State, so far as the Constitution of the United States is concerned, to tax its own corporations in respect of the stock held by them in other domestic corporations, although unincorporated stockholders are exempt from such tax, and that a discrimination between corporations and individuals in regard to such a tax could not be pronounced arbitrary, although the precise ground of policy which led to the distinction did not appear."

It was there further said: "The same is true with regard to confining the recovery of back taxes to those due from corporations. It is to be presumed, until the contrary appears, that there were reasons for more strenuous efforts to collect admitted dues from corporations than in other cases, and we cannot pronounce it an unlawful policy on the part of the State."

The only question involved in this case is the question of the right to tax gas and oil leases separately from the land. We are of the opinion that the question is settled by the statute above quoted and the decisions of this court against the contention of appellee. The decree is therefore reversed, and the case remanded, with directions to sustain the demurrer, and take such further proceedings as necessary to a determination of the issues in the case, not inconsistent with this opinion.

McHANEY, J., (dissenting). I do not agree that the construction placed on the statute, § 9856, C. & M. Digest, is correct, nor that this statute authorizes the assessment of such mineral rights as are granted by the lease in question. The mineral rights can be assessed separate from the fee under this statute only when there has been a severance of the fee in the mineral rights from the fee in the land by "conveyance or otherwise." For instance,

if A conveyed the minerals in his land to B by deed, there would be such a severance as the statute contemplates, or if A conveyed his land to B, retaining the minerals, this would be such a severance as is covered by the word "otherwise," as used in the statute. The lease in question does not convey the mineral rights, but only grants the right for a limited time to go upon the land and prospect or mine for minerals. When captured, they become personal property and subject to assessment. Before discovery and capture they remain a part of the fee in the land, and not subject to separate assessment.

Mr. Chief Justice HART agrees with this dissent.